**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------ x
In re:                                             :
                                                   :   Chapter 11
824 SOUTH EAST BOULEVARD                           :
REALTY, INC.,                                      :
                                                   :   Case No.  11-15728 (ALG)
                          Debtor.                  :
------------------------------------------------------------ x
824 SOUTH EAST BOULEVARD                           :
REALTY, INC.,                                      :
                                                   :
                          Plaintiff,               :
                                                   :
      -against-                                    :   Adv. Pro.  No.  12-01028 (ALG)
                                                   :
CHRISTOPHER RYAN, EXPO                             :
DEVELOPMENT CORP., RAZ REALTY                      :
MANAGEMENT CORP., AND 824 SOUTHERN                 :
BLVD.  HOLDING, LLC,                               :
                                                   :
                          Defendants.              :
------------------------------------------------------------ x

## **MEMORANDUM OF DECISION**

A P P E A R A N C E S:

MANUEL D. GOMEZ & ASSOCIATES, P.C.
*Counsel for Plaintiff*
  By:   Manuel D. Gomez, Esq.
225 Broadway, Suite 1010
New York, New York 10007

LAW OFFICES OF CHARLES R. CUNEO
*Counsel for Defendants*
  By:   Charles R. Cuneo, Esq.
229 Seventh Street, Suite 300
Garden City, New York 11530

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the summary judgment motion filed by Christopher Ryan, Expo Development Corp ("Expo"), Raz Realty Management Corp. ("Raz"), and 824 Southern Blvd. Holding, LLC ("824 Holding" and, together with Ryan, Expo, and Raz, the "Defendants") to dismiss the complaint (the "Complaint") filed against them by 824 South East Boulevard Realty, Inc. (the "Debtor"). The Complaint alleges that the foreclosure sale of the Debtor's building at 824 Southern Boulevard, Bronx, New York (the "Premises") was tainted by actual and constructive fraud and should therefore be avoided under Bankruptcy Code § 548. The Defendants assert that the fraud allegations are barred by the *Rooker-Feldman* doctrine or are otherwise insufficient to state a claim. Further, the Defendants argue that the foreclosure sale was proper under New York State law, conclusively establishing under Supreme Court precedent that the consideration exchanged for the Premises was reasonably equivalent in value, and thus the transfer was not constructively fraudulent. For the reasons set forth below, the motion is granted in part and denied in part.

## Facts

Unless otherwise noted, the following facts are either undisputed or based on documentary evidence not subject to material dispute.[1]

**I.    Foreclosure of the Premises**

In April 2005, the Debtor retained Expo as a general contractor in connection with significant renovation of the Premises. The type of construction fell into two categories: work required by the Department of Housing Preservation and Development (the "HPD Work") and additional work on unoccupied apartments and common areas (the "Non-HPD Work"). Defendants' Statement of Undisputed Facts ¶ 3 [hereinafter, "Defendants' SOF"]. Expo was to

---

[1] The Defendants submitted a statement of undisputed facts with their motion for summary judgment. The Debtor has not responded with specificity, as required by Local Rule 7056-1(c).

2

be paid in full for the HPD Work out of the proceeds of an interest-free mortgage loan from HPD (the "HPD Mortgage"). *Id.* Expo claims that a balance of $84,655.25 remained outstanding for the Non-HPD Work after completion of the renovations, although the Debtor alleges that this balance is the result of the Defendants' fraud. Expo filed a mechanic's lien against the Premises for $84,655.25 on August 28, 2006. *Id.* ¶ 7.

Separately, on March 10, 2008, after a jury trial in Bronx Supreme Court, a judgment was entered against the Debtor in favor of certain personal injury plaintiffs for $21,000,000. *Defendant's Reply Declaration* Ex. K [hereinafter "Reply Decl."]. On March 17, 2008, the judgment creditors docketed their judgment in Bronx County, purporting to create a lien (the "Judgment Lien") on the Debtor's real property within Bronx County, including the Premises, under N.Y. CPLR 5203(a). *Id.* at Ex. M. However, Bronx County records indicate that the Judgment Lien was filed against "824 South Eat Boulevard Realty Inc.," whereas the Debtor is "824 South East Boulevard Realty Inc." *Id.*[2]

Shortly thereafter, on July 9, 2008, Expo commenced proceedings against the Debtor to foreclose on its mechanic's lien, ultimately obtaining a default judgment of foreclosure and sale on June 19, 2009 (the "Foreclosure Judgment"). The Debtor failed to appear or otherwise act in the foreclosure proceedings. The State Court ordered a sale and "public notice of the time and place of the sale [to be given] according to law and the practice of this Court by advertising in the *New York Law Journal* and the *Bronx Press Review*." *Debtor's Memorandum of Law* Ex. A, at 4 [hereinafter "Debtor's Memo of Law"]. Expo advertised the sale by means of a weekly notice in the *New York Law Journal* for four consecutive weeks commencing February 4, 2010,

---

[2] An amended judgment, dated June 1, 2011, noted that damages had been reduced to $10,750,000 by order dated October 10, 2008. *Reply Decl.* Ex. L. Nothing in the record indicates whether this amended judgment has been docketed against the Debtor or whether the original docket entry has been amended to reflect it. *Id.* at Ex. K. However, for purposes of this motion, it is immaterial whether the judgment is in the sum of $10,750,000 or $21,000,000.

3

which stated, "Pursuant to a Decision, Order and Judgment of Foreclosure and Sale dated June 19, 2009, entered June 30, 2009, [the referee] will sell at Public Auction in room 600 of the Bronx County Courthouse, 851 Grand Concourse, Bronx, New York on March 8, 2010, at 2:00 p.m. Prem. k/a 824 Southern Boulevard, Bronx, NY." *Reply Decl.* Ex. O.  The *Bronx Press Review* notice, also published for four weeks commencing February 4, 2010, was identical except that the date of sale was stated as "March 8, 2009," a date one year before the sale was to be held, three months before the Foreclosure Judgment was entered, and almost eleven months before the first notice of sale was published in the Bronx.  *Id.*  Affidavits attesting to the publication of these notices, and copies of the notices, were attached to the referee's sale report to the State Court.  *Id.*

Prior to the sale, Expo asserts that it received about thirty inquiries, but that all interest in the sale evaporated after Expo advised the potential purchasers that the sale would be subject to two senior interests: a first priority mortgage of approximately $1,800,000, which was also in foreclosure, and the HPD Mortgage of approximately $1,200,000, which was in default but not foreclosure.  *Cuneo Declaration* ¶ 11 (attached as Ex. 4 to *Motion for Summary Judgment*). Ultimately, Expo was the only bidder at the foreclosure sale, prevailed with a bid of $10,000, and then assigned the referee's deed (the "Referee's Deed") to 824 Holding, apparently an affiliate. Expo has at various times contended in papers before this Court that it took the Premises subject not only to the senior mortgages, but also to the Judgment Lien.  *E.g.*, *Defendants' Memorandum of Law* at 4.  Nevertheless, there is no evidence in the record that Expo knew of the Judgment Lien at the time of the sale due to the error in the Debtor's name in the docketed judgment, nor is there any allegation that Expo advised any other party of the Judgment Lien prior to or at the

4

auction. Since the foreclosure sale, Expo has sought to set aside or establish priority over the Judgment Lien in a contested strict foreclosure action in Bronx State Court. *Id.* at 4 n.2.

## II.    Subsequent State Court and Bankruptcy Litigation

On May 25, 2010, two months after the foreclosure sale, the Debtor moved in Bronx Supreme Court by order to show cause (the "First OSC") to vacate the Foreclosure Judgment and Referee's Deed, which Expo opposed. The State Court vacated the Foreclosure Judgment and Referee's Deed because of Expo's failure to join the senior mortgagees as parties to the foreclosure action, but it denied the motion with respect to the Debtor's allegations that Expo had procured the Foreclosure Judgment through fraud and that Expo had already been paid in full for the Non-HPD Work. *Reply Decl.* Ex. I. On October 8, 2010, Expo moved to reargue the First OSC (the "Motion to Reargue"), to which the Debtor responded with a cross-motion to vacate the Foreclosure Judgment and Referee's Deed. The State Court granted the Motion to Reargue, accepting Expo's argument that the senior mortgagees did not have to be parties to the proceeding; it denied the Debtor's cross-motion, resulting in reinstatement of the Foreclosure Judgment and Referee's Deed. *Reply Decl.* Ex. K.

On January 18, 2011, the Debtor again moved by order to show cause (the "Second OSC") to set aside the Foreclosure Judgment and Referee's Deed. This relief was denied in a decision dated April 29, 2011, despite the introduction of additional allegations and documents by the Debtor that it claimed evidenced Defendants' fraud. *See Debtor's Memo of Law* Ex. N. Appeals were pending with respect to the Debtor's unsuccessful motions but were treated by the parties as stayed after the Debtor filed its petition for relief under chapter 11 of the Bankruptcy Code on December 14, 2011.

5

The Debtor filed the Complaint in this adversary proceeding on January 18, 2012, seeking to avoid the Foreclosure Judgment and the Referee's Deed as actually and constructively fraudulent transfers under Bankruptcy Code § 548. The Debtor submitted a declaration by Alexander Yampolsky, a certified real estate appraiser, that values the Premises as of the time of the foreclosure sale at $5,510,000.[3] *Debtor's Memo of Law* Ex. B. The Debtor also argues that the Premises were not encumbered by the Judgment Lien at the time of sale. *Debtor's Memo of Law* ¶ 11. Thus, taking only the mortgages into account, the Debtor argues that the Premises had an equity value at the time of the sale of approximately $2,510,000. The Defendants responded to the Complaint with the instant motion for summary judgment. The Defendants conceded at oral argument that an evidentiary hearing may be required for the valuation issue to be finally decided.

## Discussion

### I.  Legal Standard

Summary judgment under Rule 56, made applicable by Bankruptcy Rule 7056, is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Morenz v. Wilson-Coker*, 415 F.3d 230, 234 (2d Cir. 2005). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact, and all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once there is such a showing, the opposing party must produce specific evidence that raises a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

---

[3] The Debtor listed the value of the Premises in the schedules attached to its bankruptcy petition as $2,332,076. At oral argument, Debtor's counsel stated that he had made a mistake and scheduled this value after deducting the amounts of the outstanding mortgages.

6

*Radio Corp.*, 475 U.S. 574, 586 (1986).  A fact is considered material if it might affect the outcome of the suit under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

## II.     *Rooker-Feldman* Doctrine

Insofar as the Debtor seeks to have this Court set aside the Foreclosure Judgment and Referee's Deed, the *Rooker-Feldman* doctrine bars the Court from doing so based on fraud allegations decided against the Debtor in State Court.  The *Rooker-Feldman* doctrine provides that federal courts lack jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inciting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  The Supreme Court has instructed that "[t]he doctrine applies only in 'limited circumstances' where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court."  *Lance v. Dennis*, 546 U.S. 459, 466 (2006), quoting *Exxon Mobil*, 544 U.S. at 291.  Four elements must be present for the doctrine to apply: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by the state-court judgment; (3) the plaintiff must invite review and rejection of the state-court judgment; and (4) the state-court judgment must have been rendered before the federal proceedings commenced.  *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005).  "The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive."  *Id.*

7

In this case, the procedural elements are easily established, as the Debtor has lost in prior litigation in the State Court in which the Foreclosure Judgment was entered and the Debtor's efforts to vacate the judgment were rejected, all prior to the Debtor's bankruptcy filing. As to the substantive requirements, if the State Court had not entered the Foreclosure Judgment, or if the State Court had later vacated the Foreclosure Judgment, there would be no transfer to avoid. Further, the Court cannot find that the Defendants acted with actual intent to hinder, delay, or defraud creditors without "review and rejection" of the State Court's judgment and its orders repeatedly declining to reopen the judgment based on the Debtor's fraud allegations. The relief that the Debtor seeks here is exactly what it was unable to obtain in State Court, namely, vacatur of the Foreclosure Judgment and Referee's Deed. All four elements are thus satisfied.

The conclusion that *Rooker-Feldman* applies is supported by a line of authority holding that the doctrine is implicated by attacks on foreclosure judgments where fraud is alleged. *See, e.g.*, *Wilson v. Deutsche Bank Nat'l Trust (In re Wilson)*, 410 F. App'x 409, 410 (2d Cir. 2011) (summary order) (consideration of whether mortgagee "wrongfully foreclosed" barred where property owner had unsuccessfully sought in State Court to vacate a default foreclosure decision); *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859-60 (9th Cir. 2008) (consideration of federal causes of action barred even though based on allegations of "extrinsic fraud" on the State Court where property owners had unsuccessfully sought to vacate a default foreclosure judgment based on the same allegations); *Goldman v. Fairbanks Cap. Corp.*, 348 F. Supp. 2d 115, 118 (S.D.N.Y. 2004) (consideration of federal causes of action related to foreclosure judgment barred despite allegations of "false and fraudulent practices" by mortgagee); *Rene v. Citibank N.A.*, 32 F. Supp. 2d 539, 543 (E.D.N.Y. 1999) (consideration of RICO charges barred because "[t]he claims raised in the plaintiff's Complaint implicate the propriety of the state

judgment of foreclosure and eviction—the very issues apparently decided by the state court."); *In re Agard*, 444 B.R. 231, 243-44 (Bankr. E.D.N.Y. 2011) (consideration of debtor's objection to lift-stay motion barred because "net effect of upholding the . . . objection would be to deny [mortgage assignee's] rights that were lawfully granted . . . by the state court"), *vacated in part on other grounds*, 2012 U.S. Dist. LEXIS 43286 (E.D.N.Y. Mar. 28, 2012). Some courts have held that an exception to *Rooker-Feldman* applies where the alleged injury was caused by fraud in the procurement of the State Court judgment rather than by an incorrect decision. *See, e.g.*, *Marshall v. Grant*, 521 F. Supp. 2d 240, 244-45 (E.D.N.Y. 2007). In this case, however, all the allegations of fraud by the Defendants in filing the mechanic's lien and prosecuting the foreclosure action were put before the State Court and were rejected, as more fully discussed below.

Even though Bankruptcy Code § 548 is an independent federal cause of action by which a debtor can avoid fraudulent transactions, not dependent on State law, "*Rooker-Feldman* bars a federal claim, whether or not raised in state court, that asserts injury based on a state judgment and seeks review and reversal of that judgment; such a claim is 'inexplicably intertwined' with the state judgment. . . . [A] federal plaintiff cannot escape the *Rooker-Feldman* bar simply by relying on a legal theory not raised in state court." *Hoblock*, 422 F.3d at 86-87. *Rooker-Feldman* also bars an attack on a default foreclosure judgment where a property owner has unsuccessfully sought to vacate the default in State Court based on the same kinds of allegations raised in later federal litigation. *Murphy v. Riso*, 2012 U.S. Dist. LEXIS 3769, *18-19 (E.D.N.Y. Jan. 12, 2012).

The Debtor's argument that the "State Court did not address any of the fraudulent allegations" is inconsistent with the record. *Debtor's Memo of Law* ¶ 48. For example, in the

9

decision on the First OSC, the State Court held that the Debtor failed to establish that Expo (i) "procured the default [Foreclosure Judgment] through misrepresentations to the court" or (ii) "was paid in full for the construction work [Expo] performed." *Id.* Ex. I at 2. Although the State Court later vacated other parts of this decision upon reargument, the State Court rejected the Debtor's contention that it had "overlooked factual admissions and submissions" in the record when it decided the First OSC. *Id.* Ex. K at 3. Furthermore, the Second OSC by its own terms sought to determine whether the State Court should vacate the foreclosure sale

> on grounds that, based on certified records from the Department of Buildings, the underlying mechanics' lien contained a multitude of materially false statements, that said false statements were willfully made by [Expo], known by [Expo] to be false at the time they were made, and made with the intention of perpetuating a fraud on the 80-year old principal of the [Debtor].

*Id.* Ex. L, at ¶ 2(a). The State Court found in its decision on the Second OSC that the Debtor (i) had submitted "records obtained from the New York City Department of Buildings and additional affidavits from its principal and from an expert," and (ii) had argued, as it had "in its two prior applications, that . . . the amount of the lien is grossly exaggerated, and [that the Debtor] did not consent to the work that is the subject of the lien." *Id.* Ex. N, at 2. Nevertheless, the State Court held that the allegations "would not change the court's prior determination" not to vacate the foreclosure. *Id.* Ex. N, at 3. Thus, the written record shows that the Debtor's fraud allegations were raised and submitted in the State Court proceedings, and were decided against the Debtor. The Debtor's unsupported, conclusory statement that it did not have a full and fair chance to argue its position in the State Court is likewise contradicted by the written record.

The Debtor's only new fraud allegation is the publication error in the *Bronx Press Review*. To set aside the foreclosure as an actually fraudulent conveyance, the Debtor would have to show that the transfer of property effectuated as the result of the Foreclosure Judgment

10

was made within two years before the bankruptcy filing date "with actual intent to hinder, delay, or defraud" present or future creditors. 11 U.S.C. § 548(a)(1)(A).[4] No reasonable fact-finder could infer intent to hinder, delay, or defraud creditors from the publication mistake, as such an error is immaterial as a matter of New York law to the validity of the foreclosure sale. An "error in the published notice as to the year of the sale, stating a year which antedated the circulation of the newspaper, [is] an error which would have been apparent on its face to any prospective purchaser" and is not a basis on which to set aside a foreclosure. *DeRosa v. Chase Manhattan Mortgage Corp.*, 10 A.D.3d 317, 322, 782 N.Y.S.2d 5, 10 (1st Dep't 2004). The Debtor cites no authority holding that an obvious error in the notice of a foreclosure sale implicates fraud in the sale process. Moreover, the *New York Law Journal* notices included the correct date. Under these circumstances, no reasonable fact finder could infer fraudulent intent, and the Defendant's motion for summary judgment on the Debtor's actual fraud claim is therefore granted to the extent consideration is not barred by *Rooker-Feldman*.

The Debtor's remedy is to go forward with appeals it has apparently filed from the State Court judgment at issue. The parties seem to have treated the appeals as stayed by the Debtor's bankruptcy filing; nothing in the record indicates whether the appeals were stayed by independent action of the State Court. In any event, the Debtor may have relief from the

---

[4] Section 548(a)(1)(A), in full, provides as follows:

(a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted[.]

11

automatic stay, to the extent necessary, to continue any timely-filed appeal of the Foreclosure Judgment or the orders refusing to vacate the Foreclosure Judgment and Referee's Deed.

### III.  Debtor's Constructive Fraudulent Conveyance Claim

The Debtor also seeks relief under Bankruptcy Code § 548(a)(1)(B) with respect to the Foreclosure Judgment and Referee's Deed by claiming that they are constructively fraudulent conveyances. Section 548(a)(1)(B) allows a trustee or debtor in possession in a chapter 11 case to avoid any transfer of an interest of the debtor that was made within two years before the bankruptcy filing date if the debtor received less than "reasonably equivalent value" in exchange for the transfer, at a time when the debtor (1) was insolvent; (2) was engaged or about to engage in a transaction for which the debtor's remaining property was an unreasonably small capital; or (3) intended to incur debts beyond the debtor's ability to pay. 11 U.S.C. § 548(a)(1)(B). The only issue in dispute on the constructive fraud claim is whether the sale was for "reasonably equivalent value."

In *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994), the Supreme Court addressed the meaning of "reasonably equivalent value" in the foreclosure sale context and held that the price actually paid for the property at a foreclosure sale held in compliance with State law conclusively establishes "reasonably equivalent value" for purposes of § 548. Declining to read the term to mean either a fair market value or a fair foreclosure price, *id.* at 545, the Supreme Court stated that, where a foreclosure sale is properly conducted, "it is 'black letter' law that mere inadequacy of the foreclosure sale price is no basis for setting the sale aside . . . ." *Id.* at 542. On the other hand, "[a]ny irregularity in the conduct of the sale that would permit judicial invalidation of the sale under applicable state law deprives the sale prices of its conclusive force . . . and the transfer may be avoided if the price received was not reasonably equivalent to the

12

property's actual value at the time of the sale . . . ." *Id.* at 545-46. Further, the Supreme Court noted that a foreclosure sale might also be set aside under State foreclosure law if the price is so low as to "shock the conscience or raise a presumption of fraud or unfairness." *Id.* at 542 (internal quotation marks and citations omitted).

As discussed above, the Debtor's only allegation of "irregularity in the conduct of the sale" is the error in the date of the sale published in the *Bronx Press Review*. In order to set aside a foreclosure sale on the basis of a procedural error, the applicable State law, the New York Real Property Actions and Proceedings Law ("RPAPL"), requires a showing that a substantial right of a party was prejudiced.[5] RPAPL 231(6) provides, in pertinent part, that

> the court, upon such terms as may be just, may set the sale aside for failure to comply with the provisions of this section as to the notice, time or manner of such sale if a substantial right of a party was prejudiced by the defect.

In turn, RPAPL 231(2)(a) governs notice and requires that

> [n]otice of such sale shall be given by the officer making it by publishing a notice of the time and place of the sale, containing a description of the property to be sold, in a newspaper published in the county in which the property is located, or, if there is none, in a newspaper published in an adjoining county . . . .

It is undisputed that Expo published notice, which the referee incorporated into his sale report, in the *Bronx Press Review* with an incorrect date, to wit, "March 8, 2009" instead of "March, 8, 2010."[6] Despite this error, it is well settled that failure to give proper notice under RPAPL § 231(2) is not the type of defect that would compel a court applying New York State

---

[5] Defendants also argue that the one-year limitations period contained in RPAPL 231(6) for vacating a foreclosure action based on failure to give proper notice applies and bars the Debtor's § 548 claims. However, the instant proceeding is to set aside the foreclosure sale pursuant to Bankruptcy Code § 548, an independent basis for relief providing that a bankruptcy trustee (or chapter 11 debtor in possession) may avoid a fraudulent transfer that took place within two years of filing a bankruptcy petition. 11 U.S.C. § 548(a)(1). Although the Court looks to New York law for "reasonably equivalent value," a State's statute of limitations for vacating a foreclosure sale for procedural irregularities does not displace the limitations period for a suit under § 548, nor have the Defendants cited any authority supporting that conclusion. There is no question that the instant action is timely, as the foreclosure sale took place on March 8, 2010, and the Debtor filed its petition on December 14, 2011.

[6] As previously noted, publication in the *New York Law Journal* included the correct date.

13

law to vacate the sale because, as noted above, an "error in the published notice as to the year of the sale, stating a year which antedated the circulation of the newspaper, [is] an error which would have been apparent on its face to any prospective purchaser." *DeRosa*, 10 A.D.3d at 322, 782 N.Y.S.2d at 10.

In addition to *DeRosa*, just quoted, several other New York cases have held that notice defects only justify vacating a foreclosure upon a showing that such defects prejudiced a party. For example, in *Marine Midland Bank, N.A. v. Landsdowne Mgmt. Assocs., Inc.*, 193 A.D.2d 1091, 598 N.Y.S.2d 630 (4th Dep't 1993), the Appellate Division reversed a trial court's decision vacating a foreclosure sale held without *any* published notice, holding that such a deficiency was a "mere irregularity, not a jurisdictional defect," and the sale "could be vacated only upon a showing that the lack of notice prejudiced the right of a party to participate in the sale." *Id.* at 1092, 598 N.Y.S.2d at 631 (citations omitted). *See also Key Corp. Capital, Inc. v. Lindo*, 304 A.D.2d 620, 620, 757 N.Y.S.2d 476, 476 (2d Dep't 2003) (notice of adjourned sale published in incorrect newspaper, but sale upheld where "appellant failed to demonstrate that he was prejudiced by this irregularity,"); *Amresco New England II, L.P. v. Denino*, 283 A.D.2d 599, 600, 725 N.Y.S.2d 78, 79 (2d Dep't 2001) (reversing vacatur of foreclosure sale where there was "no evidence that prospective bidders were prevented from attending the sale due to a lack of proper notice."). The Debtor has failed to produce any evidence that a potential bidder was confused or unable to attend because of the referee's error, and thus has not shown the required prejudice.

The Debtor urges the Court to adopt the analysis in *Wayman v. Zymyewski*, 218 A.D.2d 843, 629 N.Y.S.2d 871 (3d Dep't 1995), where a foreclosure sale was set aside because the published notice stated the location of the sale would be the courthouse steps, but the sale in fact

14

took place in the courthouse lobby. However, in that case, two parties came forward to complain that they were unable to bid due to the publication error, whereas no similar party has appeared in this case. The Debtor also argues that New York courts will exercise their equitable powers to void foreclosure sales upon a showing of inadequacy of price, plus evidence of fraud or mistake, citing *Wells Fargo Bank Minn., N.A. v. Ray*, 23 Misc. 3d 931, 880 N.Y.S.2d 454 (Sup. Ct. 2009). In *Ray*, the court vacated a foreclosure sale where the property owner and the foreclosing mortgagee entered into a stipulation prior to the sale in which the owner agreed to tender payments in exchange for reinstatement of the mortgage and discontinuance of the foreclosure action; the owner and the winning bidder actually discussed the arrangement on the day of the sale. Here, the Debtor does not claim that Expo went forward with the sale despite an agreement to the contrary. Accordingly, in sum, the Defendants are entitled to summary judgment on the issue of whether a New York court would vacate the foreclosure sale based on the erroneous notice.

      Notwithstanding the foregoing, the Supreme Court also acknowledged in *BFP* that State law may void a foreclosure sale where the price obtained is so low as to shock the conscience, notwithstanding the fact the sale was otherwise compliant with State law. 511 U.S. at 542. Courts in New York have consistently held that foreclosure sales below 10% of fair market value are unconscionable, while sales at or above 50% of fair market value have been consistently upheld. *See, e.g.*, *Polish Nat'l Alliance of Brooklyn v. White Eagle Hall Co.*, 98 A.D.2d 400, 408, 470 N.Y.S.2d 642, 649 (2d Dep't 1983) (collecting cases). There is no definitive rule for sales prices in the 10% and 50% range, which may be the result of the "vast variety of circumstances under which judicial sales take place." *Id.* Sales as low as 30% of fair market

15

value have been upheld. *E.g.*, *Frank Buttermark Plumbing & Heating Corp. v. Sagarese*, 119 A.D.2d 540, 500 N.Y.S.2d 551 (2d Dep't 1986).

Calculation of the percentage of fair market value paid by Expo requires a determination of the status of the Judgment Lien and possibly the value of the Premises, neither of which is feasible on the present record. Expo has commenced litigation to contest the priority of the Judgment Lien based on the docketing of a judgment on March 17, 2008, prior to the sale, against "824 South Eat Boulevard Realty Inc." in an amount slightly different from the judgment against the Debtor, "824 South East Boulevard Realty Inc." New York docketing statutes, including CPLR 5018 and 5203, do not appear to address this issue, which has not been briefed, and the judgment creditors have not appeared on this motion. If the judgment creditors have a valid lien against the Premises, then it seems virtually certain that Expo purchased the Premises subject to encumbrances far in excess of its value.

On the other hand, if the Judgment Lien is invalid, Expo may have purchased the Premises with equity of approximately $2,510,000 for only $116,910.32 (a sum calculated in the referee's sale report that includes the foreclosed lien, interest due pursuant to the Foreclosure Judgment, and costs and expenses of the sale). *See Reply Decl.* Ex. O. Assuming this figure is accurate, it would represent a sale price of about 4.7% of the value of the Premises after subtraction of the two senior mortgages. Since the Debtor's valuation is the only one in the record, the sale price might well be unconscionable under New York State law. As the Defendants conceded at oral argument, resolving this issue may require an evidentiary hearing, depending on the outcome of Expo's litigation regarding the status of the Judgment Lien.

Accordingly, the Court denies summary judgment without prejudice to renewal on the issue of whether the sale price paid at the foreclosure sale was unconscionably low and therefore

16

may be avoided under *BFP* and Bankruptcy Code § 548(a)(1)(B).  Defendants' motion for summary judgment is otherwise granted.

### Conclusion

For the reasons set forth above, Defendants' motion for summary judgment is granted in part and denied in part.  The Debtor may also have relief from the automatic stay to the extent necessary to pursue any appeal rights it may have with respect to the Foreclosure Judgment and State Court orders discussed herein.  Either party may settle an order on ten days' notice.

Dated: New York, New York
      August 17, 2012

                              **s/Allan L. Gropper**
                              UNITED STATES BANKRUPTCY JUDGE